## DECLARATION

THIS affidavit is submitted in support of a complaint for forfeiture of $718,603.91 in United States currency seized pursuant to the execution of a search and seizure warrant on bank accounts belonging to Philip James Harrington III ("Harrington III") and Noe Verduzco-Norzagaray ("Verduzco-Norzagaray").  As described more fully *infra*, the search and seizure warrant was executed in August, 2018, in the state and district of Maryland.

I, Cara Rose, Special Agent of Homeland Security Investigations ("HSI"), submit that there are sufficient facts to support a reasonable belief that a seizure totaling $718,603.91 in U.S. currency constitutes (1) money, negotiable instruments, securities, or other things of value received as proceeds from the unlawful employment and harboring of illegal aliens and visa fraud, thus subject to forfeiture pursuant to 18 U.S.C. ' 981(a)(1)(C).

    a.  Harrington III is the owner of Captain Phips Seafood Inc. ("Capt. Phips").  Capt. Phips is a corporation engaged in both the intrastate and interstate commercial wholesale seafood industry; specifically, the processing of shellfish, including oyster shucking and crabmeat picking, for packaging and distribution to seafood wholesalers.  Additionally, the business also produces, stores, and delivers ice.

    b.  Harrington III also owns two ice processing plants and businesses: Woodfield Ice Co. Inc. "(Woodfield Ice") in Upper Marlboro, Maryland, and Easton Ice Co. Inc. ("Easton Ice") in Easton, Maryland.

    c.  Based on HSI's investigation, HSI believes Harrington III also has an interest in two Ocean City, Maryland motels: the Sea Hawk Motel (12410 Coastal Highway, Ocean City) and the Shangri-La Motel (8400 Coastal Highway, Ocean City).  These motels

were previously owned by Harrington III's father, Philip Harrington Jr. (now

deceased) and are currently operated by Harrington III's family members.

d. Verduzco-Norzagaray is the manager of Capt. Phips and is responsible for direct

communication with Hispanic workers because he is proficient in Spanish.

e. Capt. Phips has repeatedly been investigated by various state and federal agencies for

violations involving the unlawful employment and harboring of illegal aliens and visa

fraud.

f. Since approximately 2013, Capt. Phips has applied for H-2B[1] visa recipients, *i.e.*

temporary non-agricultural workers, through Del-Al Associates, Inc., a labor

recruiting and staffing firm located in Charlottesville, Virginia. According to filings

with United States Citizenship and Immigration Services ("USCIS"), Capt. Phips

engaged the services of Del-Al Associates to locate individuals in Mexico to work for

Capt. Phips; potential recruits applied for H-2B visas in Mexico under the petition

filed by Capt. Phips. Once recruits had been located, Capt. Phips then used Phoenix

Labor Consultants, LLC, located in Amherst, Virginia, as its agent of record to obtain

approval of the company's H-2B petitions. [2]

---

[1] Under U.S. laws and regulations, individuals who are not U.S. citizens (aliens) are not permitted to lawfully work in the U.S. unless they have been granted permission by the U.S. government. Certain aliens can obtain a nonimmigrant visa ("NIV") from the United States Department of State to apply for admission into the U.S. or to lawfully remain in the U.S. A visa is a document issued by a consular representative of the U.S. that permits the bearer to apply for admission to enter the U.S., either as an intending immigrant (i.e. an immigrant visa) or for *temporary* entry into the U.S. as a nonimmigrant by way of a NIV. NIVs are issued in various classifications, such as temporary nonagricultural worker (hereinafter, "H-2B").

[2] Amanda Evelyn Wright operates Phoenix Labor Consultants, LLC. According to USCIS, Ms. Wright has also previously been investigated for alleged visa fraud.

g. As part of the H-2B application process, employers are required to file with United States Department of Labor's Employment and Training Administration ("ETA") an Application for Prevailing Wage Determination (ETA Form-9141) and an Application for Alien Employment Certification (ETA Form-9142).

    1. The ETA Form-9141 details, among other things, the employment-based visa category (in this case, an H-2B visa) and the requester's point-of-contact, employer information, wage processing, minimum job requirements, and the place of employment.

    2. The ETA Form-9142 and its addendums and/or attachments, set forth, among other items, the temporary need information (including the period of intended employment, the occupation title and the number of worker positions needed) and includes a "Statement of Temporary Need." It also asks for the name of the employer, employer contact information, job offer information, minimum job requirements, place of employment, rate of pay and recruitment information. The requester must ".... identify the type(s) or source(s) of recruitment, geographic location(s) or recruitment, and the date(s) on which the recruitment was conducted." The prospective employer must complete and sign the ETA Form-9142, its addendums and attachments under penalty of perjury. Upon signing, the employer agrees to comply with Department of Labor regulations including the representation that "[t]he employer will not place any H-2B workers employed pursuant to this application outside the area of intended employment or in a job classification not listed on the approved application unless the employer has obtained a new

3

approved ETA Form-9142." *See* ETA Form-9142-Appendix B.1, Part B "Employer Declaration," Item 11.

3. Once the ETA Form-9142 is certified, the Department of Labor issues a certifying letter (Final Determination Letter). The requester/employer then files a Petition for Nonimmigrant Worker (Form I-129) with USCIS which similarly requires the employer to provide the name of the employer, location of job, and number of workers needed for that specific job in a specific geographic area in the U.S. The applicant is required to submit the DOL approved certification letter with the Form I-129.[3]

4. If the Form I-129 is approved, USCIS issues a Form I-797B (Notice of Action) informing the employer that the workers are granted status for the authorized period of time.

h. In 2017, Capt. Phips requested, and received, 25 workers from Mexico to work as "Seafood Processors – Oyster Shuckers." However, HSI's investigation revealed that none were doing the work Capt. Phips petitioned for, and almost half worked at locations other than where Capt. Phips claimed they would be employed.

1. During an August 2017 interview, Harrington III told HSI agents that none of the H-2B visa recipients that came to work at Capt. Phips worked at any other location other than the ice plant in Secretary, Maryland.

2. However, of those 25 individuals, investigators believe that approximately six

---

[3] The Form I-129 does not require that the requestor/employer specifically name the workers that will be brought in for employment.

4

worked at Woodfield Ice, three worked at Easton Ice, and two worked at the
Sea Hawk Motel as maids.

i.  During, but not limited to, 2017, Harrington III also allegedly employed
    undocumented workers at his businesses.

    1.  HSI was informed that there were approximately 15-20 undocumented aliens
        working at Woodfield Ice. Some of these workers were previously arrested
        by HSI and were thereafter allowed continued employment by Harrington III.

    2.  According to Maryland Wage and Hour reports for Quarters 1 and 2 in 2017,
        at least eight undocumented workers were receiving wages from Capt. Phips.
        Furthermore, between 2014 and 2017, Capt. Phips reported wages for
        approximately 21 individuals that appeared to have no legal status in the U.S.
        Additionally, it appears that Social Security numbers were being used illegally
        by individuals receiving wages from Capt. Phips. HSI agents and officers
        found that at least nine social security numbers have been identified that
        appear to have been stolen to collect wages at Capt. Phips.

j.  Workers also informed HSI, and HSI surveillance confirmed, that while Capt. Phips
    provided housing to workers, living conditions were significantly substandard and
    extremely crowded. HSI also learned that there were a number of individuals living
    in the houses who were undocumented.

k.  Harrington Jr. (now deceased), Harrington III's father, was interviewed during a site
    visit by USCIS and stated the following: He was aware of the visa petitions for
    workers but had no knowledge of the details of the petition, except that the workers
    requested are from Mexico and are mostly male. He stated that he nonimmigrant

5

workers' duties include "doing ice" and "general labor." HSI confirmed that his son,

Harrington III, gave Harrington Jr. the H-2B visa petition already filled out and then

he signed it, because he was the President and owner of the businesses at the time.

He alleged that he did not know what the workers are paid and did not know the

hours they worked, because Harrington III supervised the workers.

l.  On or about February 2018, Capt. Phips filed a petition for 23 H-2B workers, stating

that the employees being petitioned for would be performing under job title

"Production Worker" and Occupation title "Packers and Packagers, Hand." The job

duties assigned to this classification were only to be performed at 100 Water Street in

Secretary, Dorchester County, Maryland during daytime working hours. The specific

jobs that the H-2B visa beneficiaries were authorized to perform are as follows:

1. Load bags onto processing equipment;
2. Clean work area using hand tools (sweep ice from floor);
3. Examine and inspect bags to ensure bagging specifications are met;
4. Spot measure and weigh on scales;
5. Mark pallets; and
6. Remove defective ice into trash

m.  In July 2018, HSI agents and officers conducted surveillance at Deal Island Marina in

Somerset County, Maryland and observed several undocumented workers and H-2B

visa recipients hauling oysters shells in vehicles belonging to Capt. Phips and

Woodfield Ice. The workers then began pulling large amounts of spat (baby oysters

that are growing on already shucked oyster shells) out of canisters, loading onto a

barge (specifically, MD 5220 CR: a 50 ft. homemade deisel barge registered to

Harrington III), and then departing to dump the oysters in oysters beds owned by

Harrington III. Harrington III was present, directed the workers, and then ultimately

captained the barge into the water to dump the oysters. Witness information provided to HSI indicated that that particular operation was conducted at least once or twice a week. The workers were also responsible for shucking the oysters and collecting the shells at Capt. Phips, which was not included in the classification of their 2018 visas.

n. An addendum letter submitted by Harrington III along with the petition for H-2B workers mentioned only that the H-2B workers would be packing and working with ice. Therefore, unloading or loading of oyster spat, to include transporting the spat and then depositing the spat in the water off the side of a boat, and in particular, being off-site doing anything other than bagging ice, was contrary to the terms of the visa petition which was applied for and signed by Harrington III.

o. Out of the 2018 H-2B visa recipients it was reported to HSI investigators that four were living and working at Easton Ice, two were working intermittently at Woodfield Ice, and the others were working on oysters, driving trucks, making and delivering ice, mowing lawns, and landscaping. HSI was also informed that several of the undocumented workers who were arrested in 2017 were still working daily for Harrington III.

p. In 2017 and 2018 various workers informed HSI during the course of HSI's investigation that they were not paid the prevailing wage for the actual duties they performed for Capt. Phips. They also reported working significantly longer hours than allowed under an H-2B visa, sometimes as many 18 hours per day.

q. In June 2018, an agent with the Office of Investigations – Labor Racketeering and Fraud of the Department of Labor's Office of Inspector General ("DOL/OI-LRF") completed a preliminary, comparative analysis between the specific temporary jobs

and prevailing wage rates contained on the Applications for Temporary Employment
Certification that Harrington III submitted, or caused the submission of, for Capt.
Phips and the actual job duties and approximate wage rates for the actual work that
the H-2B beneficiaries were directed to engage, which was different than the duties
attested to in the submitted labor certifications.[4]   Specifically, using a standard 5-day,
40-hour work week model, DOL/OI-LRF calculated an approximate amount of wage
underpayments to H-2B beneficiaries petitioned for, and employed by, Capt. Phips.
Included in the analysis was a review of the Online Wage Library located on the
Foreign Labor Certification Data Center website which provides a searchable
database for investigators to locate prevailing wage determinations by county/state
and occupation.  Information provided during the interviews of the H-2B
beneficiaries working for Capt. Phips revealed that they were working in jobs that
were not included in the visa petition request Harrington III submitted, or caused the
submission of, for Capt. Phips.  The preliminary estimation of wage underpayments

---

[4] In July 2018, the Department of Labor – Wage and Hour Division ("DOL-WHD") was also requested to provide a
back wage determination analysis for a scheduled law enforcement action in August 2018 at Captain Phips,
Woodfield Ice, and Easton Ice.  In November 2018, DOL-WHD provided a preliminary back wage determination of
$35,000 owed to 27 H-2B visas beneficiaries and $1,000,000 civil monetary penalties to Harrington III for
violations of 29 CFR 503.16 of the Fair Labor Standards Act ("FLSA").  DOL-WHD reviewed H-2B beneficiary
interviews, payroll records, and ETA Form-9142 (Applications for Alien Employment Certification) for calendar
years of 2016, 2017, and 2018.  DOL-WHD preliminary review cited the following 29 CFR 503.16 violations:
prohibited fees to recruiter; notice to USCIS and OFLC for early departure; job classification; location(s)/place of
employment; impermissible deductions for housing.  The DOL-WHD review did not include back wage
determinations owed to illegal aliens employed by Harrington because they were paid over the federal minimum
wage rate required per the FLSA.  The State of Maryland, Department of Labor, Licensing and Regulation would
handle violations of state minimum wage requirements for illegal aliens.

to the H-2B beneficiaries between 2013 and 2018 is in excess of $672,000.[5]

r.   In 2017, Harrington III reported on the I-129 Application that his company had four

workers yet grossed an annual income of $4,181,469.00. In 2018, Harrington III

reported on the I-129 Application that his company had only three workers yet

grossed an annual income of $4,543,325.00. Indeed, HSI performed a limited review

of the Provident State Bank Accounts used by Harrington III's businesses – Capt.

Phips, Woodfield Ice, and Easton Ice – and found significant deposit activity, totaling

approximately $11,527,563.00. For example:

1.  From September 2016 through September 2017 the Woodfield Ice account,

Provident State Bank Account 200016539, showed approximately

$5,306,603.00 in deposits.

2.  From December 2016 through December 2017, the Easton Ice account,

Provident State Bank Account 200012843, showed approximately

$2,111,225.00 in deposits.

3.  From October 2016 through October 2017, the Capt. Phips Seafood account,

Provident State Bank Account 200008056, showed approximately

$4,109,735.00 in deposits.

s.   Capt. Phips, Woodfield Ice, and Easton Ice rely primarily on manual labor. It is

highly unlikely that such companies would be able to gross more than $4 million per

year and have approximately $11 million in deposits during a one-year period with

---

[5] This sum does not include any proceeds Harrington III or his businesses obtained from undocumented workers. The use of undocumented workers is financially beneficial to a business that employs them as they are generally paid well below the prevailing wage and do not incur some of the additional expenses a legally employed individual otherwise would. These additional expenses include items such as Social Security, Medicare and Unemployment taxes, workers compensation insurance, etc.

only 3-4 employees.  Visa fraud and the use of undocumented labor was an integral component of Harrington III's business operations.

t. Based on the foregoing, on August 7, 2018 and August 8, 2018, the United States Magistrate Judge authorized search and seizure warrants for the following addresses associated with Harrington III, his person, and his businesses:

1. Capt. Phips Seafood, 100 Water Street, Secretary, MD 21664
2. 104 Main Street, Secretary, MD 21664
3. 107A Poplar Street, Secretary, MD 21664
4. 107C Poplar Street, Secretary, MD 21664
5. 3725 Sunnyside Road, East New Market, MD 21631
6. 101A-B Linden Ave, Secretary, MD 21664
7. Woodfield Ice, 16205 Branch Court, Upper Marlboro, MD 20774
8. Easton Ice, 108 East Ave, Easton, MD 21601
9. Person of Philip Harrington III

u. On August 7, 2018, the United States Magistrate Judge also authorized search and seizure warrants for the following addresses associated with Verduzco-Norzagaray and his person:

1. 6123 Suicide Bridge Road, East New Market, MD 21631
2. 6101 Suicide Bridge Road, East New Market, MD 21631
3. Person of Noe Verduzco-Norzagaray

v. On August 7, 2018, the United States Magistrate Judge also authorized the search and seizure warrants for the following bank accounts associated with Harrington III:

1. Provident State Bank Account 200008056 in the name of Capt. Phips Seafood, Inc.
2. Provident State Bank Account 200016539 in the name of Woodfield Ice. Co. Inc.
3. Provident State Bank Account 200012843 in the name of Easton Ice Co. Inc.

w. On August 31, 2018 the United State Magistrate Judge also authorized the search and seizure warrants for the following Safe Deposit Boxes associated with Harrington III and Verduzco.

1. Provident State Bank Safe Deposit Box #184
2. Provident State Bank Safe Deposit Box #186
3. Hebron Savings Bank Safe Deposit Box #129

x. Investigators executed the following search and seizure warrants on August 9, 2018

and the following proceeds were recovered:

1. From Capt. Phips Seafood, 100 Water Street, Secretary, MD 21664, investigators recovered $140,813.96 in U.S. Currency and $1,850.00 in U.S. Savings Bonds.
2. From 3725 Sunnyside Road, East New Market, MD 21631, investigators recovered $90,871.00 in U.S. Currency.
3. From the person of Harrington III investigators recovered $3,880.00 in U.S. Currency.
4. From the Provident State Bank Account 200008056 investigators recovered $153,380.88 in U.S. Currency.
5. From the Provident State Bank Account 200016539 investigators recovered $231,820.10 in U.S. Currency.
6. From the Provident State Bank Account 200012843 investigators recovered $333,402.93 in U.S. Currency.

y. Investigators executed the following search and seizure warrants on August 31, 2018

and the following proceeds were recovered:

1. From Provident State Bank Safe Deposit Box #184, investigators recovered $90,100.00 in U.S. Currency.

z. In total, investigators seized $718,603.91 in U.S. Currency from Provident State Bank Accounts 200008056, 200016539, and 200012843 – the business accounts associated with Harrington III and used by Capt. Phips, Woodfield Ice, and Easton Ice respectively. This currency represents a fraction of the profits these businesses were able to earn as a result of their on-going visa fraud and unlawful employment of undocumented workers.

aa. The defendant property in this civil forfeiture case subject to forfeiture as proceeds

from the unlawful employment and harboring of illegal aliens and visa fraud is

therefore a total of $718,603.91.

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. § 1746
THAT THE FACTS SUBMITTED BY HOMELAND SECURITY INVESTIGATIONS, IN
REFERENCE TO THE SEIZURE OF $718,603.91 IN UNITED STATES CURRENCY FROM
PHILIP JAMES HARRINGTON III ARE ACCURATE, TRUE AND CORRECT TO THE
BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

*Cara Rose*

Cara Rose
Special Agent
Homeland Security Investigations